

NUMBER 13-19-00243-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

CHRISTUS SPOHN HEALTH SYSTEM
CORPORATION D/B/A CHRISTUS SPOHN
HOSPITAL CORPUS CHRISTI—SOUTH,                    Appellant,

v.

CHERYL WILLIAMS AND RONALD WILLIAMS,              Appellees.

On appeal from the 94th District Court
of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes**
**Memorandum Opinion by Chief Justice Contreras**

This interlocutory appeal concerns a health care liability suit filed by appellees Cheryl and Ronald Williams against appellant Christus Spohn Health System Corporation d/b/a Christus Spohn Hospital Corpus Christi—South (Spohn). Spohn contends by one issue that the trial court erred in denying its plea to the jurisdiction because: (1) it is entitled

to governmental immunity as a Hospital District Management Contractor (HDMC); (2) the Williamses did not plead a claim for which immunity is waived; and (3) in the alternative, the Williamses did not timely notify Spohn of their claim prior to filing suit. We reverse and render.

## I. BACKGROUND

Cheryl Williams was admitted to Christus Spohn Hospital Corpus Christi—South on or about June 19, 2014, for shoulder replacement surgery. According to the Williamses' petition, while Cheryl was recovering from the surgery at the hospital, she developed a pressure sore on her lower back which later progressed into an abscess and required additional surgery. She also suffered an infection, causing her to go into septic shock. Eventually, Cheryl was discharged to a nursing facility on or about July 9, 2014, and she returned home on or about September 12, 2014.

The suit alleges that Spohn, by and through its agents and staff, was negligent in Cheryl's post-surgical care.[1] Specifically, the Williamses asserted that hospital staff failed to comply with the applicable standard of care by: (1) "failing to reposition [Cheryl] on a regular basis in order to prevent formation of a pressure sore"; (2) "failing to take appropriate measures and precautions to prevent formation of a pressure sore"; (3) "failing to timely identify [Cheryl]'s pressure sore forming on her back"; and (4) "failing to report skin changes present for [Cheryl] to her physicians."

Spohn answered the suit and filed a plea to the jurisdiction on the basis of governmental immunity. Spohn argued that it is an HDMC and is considered a

---

[1] The Williamses also sued two physicians that treated Cheryl at the hospital—Sunil K. Gupta, M.D., and Miguel Berastain Jr., M.D.—as well as Gupta's professional association, Sunil's Hospitalists P.A. Those defendants are not parties to this appeal.

2

"governmental unit" for immunity purposes under chapter 285 of the Texas Health and Safety Code. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 285.071, .072. It further argued that, because the subject claim does not involve the use of personal property, and because the Williamses failed to provide timely pre-suit notice of their claim, its governmental immunity has not been waived by the Texas Tort Claims Act (TTCA). *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.101, .021(2); TEX. GOV'T CODE ANN. § 311.034.

As evidence supporting its plea, Spohn attached the affidavit of Jonny F. Hipp, the administrator and chief executive officer of the Nueces County Hospital District (NCHD). Hipp stated that Spohn's predecessor and NCHD entered into several agreements in 1996, including a "Master Agreement," a "Lease Agreement," and an "Indigent Care Agreement." The parties later agreed to terminate those agreements in a "Membership Agreement" dated September 28, 2012. Copies of all four agreements were attached to Hipp's affidavit. The Williamses filed a response to the plea, arguing that health and safety code § 285.072 does not apply because their claim does not arise from the "management or operation of a hospital under a contract with a hospital district," nor does it arise from the "provision of services" under such a contract. The response also contended that Spohn had timely actual notice of their claims.

After a hearing on May 6, 2019, the trial court denied the plea to the jurisdiction. This accelerated appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

## II. DISCUSSION

### A. Standard of Review

A plea to the jurisdiction is a dilatory plea that seeks to dismiss a cause for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). Its

3

purpose is to defeat a cause of action without regard to whether the claims asserted have merit. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). We review the disposition of a jurisdictional plea de novo. *Suarez v. City of Tex. City*, 465 S.W.3d 623, 632 (Tex. 2015).

The plaintiff has the initial burden to allege facts that affirmatively demonstrate the trial court's jurisdiction to hear a case. *Tex. Dep't of Transp. v. Ramirez*, 74 S.W.3d 864, 867 (Tex. 2002) (per curiam). We construe the pleadings liberally in favor of the plaintiff and look to the pleader's intent. *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 927 (Tex. 2015) (per curiam). If the pleadings generate a fact question regarding the jurisdictional issue, the plea to the jurisdiction must be denied. *Id.* at 927. If jurisdictional facts are disputed, we consider relevant evidence submitted by the parties when necessary to resolve those disputes, even when the evidence implicates the merits of the cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004); *see City of Waco v. Kirwan*, 298 S.W.3d 618, 622 (Tex. 2009). We take as true all evidence favorable to the non-movant and we resolve any doubts in the non-movant's favor. *Miranda*, 133 S.W.3d at 227–28.

## B.     Applicable Law

The doctrine of sovereign immunity holds that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006) (citing *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847)). Under the doctrine, courts lack subject-matter jurisdiction over suits against governmental units unless immunity has been clearly and unambiguously waived by the legislature. *Sykes*, 136 S.W.3d at 638; *see* TEX. GOV'T CODE ANN. § 311.034.

4

The TTCA clearly and unambiguously waives governmental immunity for, among other things, "personal injury and death [proximately] caused by a condition or use of tangible personal or real property if the government unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2); *see Miranda*, 133 S.W.3d at 224. Moreover, "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." TEX. GOV'T CODE ANN. § 311.034.

An HDMC is defined as "a nonprofit corporation, partnership, or sole proprietorship that manages or operates a hospital or provides services under contract with a hospital district that was created by general or special law." TEX. HEALTH & SAFETY CODE ANN. § 285.071.

> A[n HDMC] in its management or operation of a hospital under a contract with a hospital district is considered a governmental unit for purposes of [the TTCA], and any employee of the [HDMC] is, while performing services under the contract for the benefit of the hospital, an employee of the hospital district for the purposes of [the TTCA].

*Id.* § 285.072.

## C.     Analysis

Following the submission of initial briefs in this appeal, we considered whether Spohn is entitled to immunity as an HDMC in a similar case involving a different Spohn hospital. *See Christus Spohn Health Sys. Corp. v. Gracia*, No. 13-18-00485-CV, 2019 WL 4008554, at *1 (Tex. App.—Corpus Christi–Edinburg Aug. 26, 2019, pet. filed) (mem. op.). As here, the plaintiffs in *Gracia* alleged that Spohn provided negligent post-surgical care, and Spohn argued it was immune to suit as an HDMC. *Id.* The record in that case included the same Membership Agreement that was attached to Spohn's plea to the

jurisdiction here.[2] In *Gracia*, we noted that the Membership Agreement provides as follows:

> [T]he parties determined that it is in their mutual interest to transition to a joint membership structure of Spohn by CHRISTUS Health[3] and [NCHD], such that CHRISTUS Health and [NCHD] will be Members of Spohn, consistent with the related amended organizational documents of Spohn and the continued operation of Spohn as the public, safety-net hospital in Nueces County, Texas . . . .

> Spohn serves as the public, safety-net hospital in Nueces County, Texas by providing care to the low-income and indigent population in Nueces County at the CHRISTUS Spohn Hospital Corpus Christi—Memorial, CHRISTUS Spohn Hospital Corpus Christi—Shoreline and CHRISTUS Spohn Hospital Corpus Christi—South hospital facilities (these Spohn hospital facilities along with the clinics, medical offices, and other health care facilities on the campuses of or affiliated with such Spohn hospital facilities that share common Medicare and Medicaid provider agreements are collectively referred to herein as the "Nueces County Facilities") consistent with the provisions set forth in [chapter 281 of the Texas Health and Safety Code], the Indigent Health Care Act, and in accordance with the [Indigent Care Agreement] and [NCHD]'s policies . . . .

*Id.* at *2. The Gracias argued that Spohn could not be an HDMC under the Membership Agreement because it already owned and operated the hospital at issue prior to any agreement with NCHD, and the Membership Agreement "does not alter that ownership right." *Id.* at *3. They also argued that Spohn is not entitled to immunity because the patient was not indigent, and therefore "his care does not fall within the contracted services between Spohn and NCHD." *Id.* We rejected both arguments and concluded that Spohn was entitled to immunity under § 285.072. *Id.* (noting that "[t]here is nothing in the statute that states that a hospital management contractor cannot own the hospital that is being operated under the contract in order to come within the purview of the statute" and

---

[2] We take judicial notice of the record in the *Gracia* case. *See* TEX. R. EVID. 201; *Estate of York*, 934 S.W.2d 848, 851 (Tex. App.—Corpus Christi–Edinburg 1996, writ denied).

[3] The Membership Agreement states that "CHRISTUS Health" is a Texas non-profit corporation separate from Spohn.

"[t]here is nothing in the plain language of the statute that delineates between the types of care received at a hospital that is being managed for the hospital district" (quoting *Christus Spohn Health Sys. Corp. v. Ven Huizen*, No. 13-10-00400-CV, 2011 WL 1900174, at *8 (Tex. App.—Corpus Christi–Edinburg May 19, 2011, pet. denied) (mem. op.))). We further held that immunity was not waived by the TTCA because the Gracias did not plead that their injuries were "caused by the condition or use of tangible personal or real property." *Id.* (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2)).

Like the Gracias, the Williamses do not dispute that NCHD is a hospital district created by general or special law, nor do they dispute that Spohn entered into an agreement with NCHD under which it was obligated to "manage[] or operate[] a hospital or provide[] services . . . ." *See* TEX. HEALTH & SAFETY CODE ANN. § 285.071. Instead, they argue that Spohn should not be considered a "governmental unit" in this case because their claim does not *arise from* Spohn's management or operation of a hospital, or its provision of services, under a contract with a hospital district. *See id.* § 285.072. In that regard, they note that the 1996 Master Agreement did not require Spohn to "manage or operate" the particular hospital where Cheryl received her care, and "nothing in the [2012] Membership Agreement altered the manner in which [Spohn] was operating and managing" the hospital. The Williamses further contend that Spohn is not a "governmental unit" for purposes of their suit because Cheryl was not indigent.

The Williamses are correct that, merely because an entity is an HDMC under the statutory definition, that does not necessarily mean that it must be considered a governmental unit for immunity purposes. Instead, § 285.072 makes clear that an HDMC is considered a governmental unit *only* "in its management or operation of a hospital under

7

a contract with a hospital district," and its employee is considered an employee of the hospital district *only* "while performing services under the contract for the benefit of the hospital . . . ." *Id.* § 285.072. Thus, if an HDMC is sued based on acts or omissions that occur wholly outside of its obligations under its contract with the hospital district, then it cannot claim governmental unit status under § 285.072. *Cf. Jones v. Nueces County*, 589 Fed. Appx. 682, 686 (5th Cir. 2014) (finding that Spohn was properly considered a "governmental unit" under § 285.072 in a suit claiming it was negligent in providing medical services at the Nueces County Jail pursuant to a contract with NCHD).

But that is not the case here. In addition to the language we quoted in *Gracia*, the Membership Agreement also provides as follows:

> **Section 1.01. Public Hospital and Delivery of Indigent Care Services.** Spohn has operated and will continue, during the term of this Agreement, to operate a safety-net hospital available for the provision of inpatient and outpatient hospital services to the indigent and needy residents in Nueces County, Texas at the Nueces County Facilities, in accordance with [NCHD]'s obligations under the Texas Constitution and the Act and as more fully set forth in Section 8.03 and Schedule 2 of this Agreement.

This paragraph requires Spohn to "operate a safety-net hospital" at the "Nueces County Facilities," which includes Christus Spohn Hospital Corpus Christi—South, the hospital where Cheryl received her allegedly negligent care.[4] It is undisputed that, although Cheryl was not an indigent patient, her injury arose from Spohn's "operation" of the hospital as required by this paragraph. In other words, the claim implicates the acts and omissions of Spohn "in its management or operation of a hospital under a contract with a hospital district." *See* TEX. HEALTH & SAFETY CODE ANN. § 285.072. Therefore, Spohn must be

---

[4] Though Christus Spohn Hospital Corpus Christi—South was not one of the hospitals to which the 1996 Master Agreement applied, that agreement was terminated and entirely supplanted by the 2012 Membership Agreement.

considered a "governmental unit" under § 285.072. *See id.*; *see also Gracia*, 2019 WL 4008554, at *3–4.

The Williamses have not argued that their live claim is one for which governmental immunity has been waived. In particular, they do not claim that Cheryl's injury was "caused by a condition or use of tangible personal or real property." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). Accordingly, we conclude that Spohn is immune to the Williamses' suit as an HDMC and the trial court erred in denying its plea to the jurisdiction. *See Gracia*, 2019 WL 4008554, at *3–4. Spohn's issue is sustained.[5]

### D. Opportunity to Amend Pleadings

When a plaintiff fails to plead facts that establish jurisdiction, but the petition does not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiff should be afforded the opportunity to amend. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

In *Gracia*, we held that the plaintiffs' claim was "incurably defective" because "[n]o allegation in their pleadings references the use of any tangible personal property" and the plaintiffs did not "provide any additional information about what, if any, tangible personal property may have been used." 2019 WL 4008554, at *4. In their responsive brief on appeal, the Williamses contend that they should be given the opportunity to add additional allegations "which involve the condition and use of the standard mattress which proximately caused [Cheryl] to develop a pressure sore and abscess."

We disagree. The Beaumont court of appeals considered a claim very similar to

---

[5] Having sustained this issue, and in light of our determination herein that the Williamses are not entitled to an opportunity to replead, we need not address whether Spohn received timely notice of the claim. *See* TEX. R. APP. P. 47.1.

the one suggested by the Williamses in *Spindletop MHMR Center v. Beauchamp ex rel. Humphrey*, 130 S.W.3d 368 (Tex. App.—Beaumont 2004, pet. denied). There, Humphrey suffered bed sores which her guardian claimed were "caused by a bed and other property, including 'ulcer preventing devices.'" *Id.* at 369. The court of appeals held that these allegations were not sufficient to establish a waiver of the defendant's governmental immunity under § 101.021(2) of the TTCA. *Id.* at 372. The court observed:

> Plaintiff makes no allegations in this case attacking the condition of the bed and the other named equipment, that is, that the property was defective or lacked an integral safety feature. Non-use of "ulcer preventing devices" is not use of tangible personal property within the statutory waiver, and allegations of negligent care are not sufficient to establish waiver of immunity. . . . As in *Tomlinson*, the property "used" by Spindletop, the bed and the wheelchair, furnished the condition which made the injury possible. But providing Humphrey a bed and a wheelchair are not the acts that are alleged to have caused injury. Rather the pleadings assert a failure to "assess, treat and monitor" her condition as the cause of her injury. The Legislature has not waived immunity to suit for that alleged tort.

*Id.* (citing *Gainesville Mem'l Hosp. v. Tomlinson*, 48 S.W.3d 511 (Tex. App.—Fort Worth 2001, pet. denied) ("If there were to be a waiver of immunity in all cases where some item of personal property is either used or not used, there would be virtually an unrestricted waiver of immunity, which was not the intent of the legislature. . . . Merely asserting that some form of tangible personal property is involved is not sufficient to demonstrate waiver of immunity.")).

The Williamses do not suggest that the mattress at issue was defective or lacked an integral safety feature, nor do they suggest that the mattress was "used" in an unsafe or improper manner. *See id.*; *see also Dallas Cty. MHMR v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) ("Property does not cause injury if it does no more than furnish the condition that makes the injury possible."); *San Antonio State Hosp. v. Cowan*, 128 S.W.3d 244, 246 (Tex. 2004) (noting that the word "use" in § 101.021(2) "was clearly

10

intended as a real limit on the waiver of sovereign immunity" and distinguishing other cases in which it is alleged that "a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries"). Under these circumstances, we conclude that the Williamses' claim has incurable jurisdictional defects. Therefore, they are not entitled to the opportunity to replead. *See County of Cameron*, 80 S.W.3d at 555; *see also Univ. of Tex. at Brownsville v. Ramos*, No. 13-11-00302-CV, 2012 WL 256137, at *6 (Tex. App.—Corpus Christi–Edinburg Jan. 26, 2012, pet. denied) (mem. op.) (denying opportunity to replead where plaintiff, who had severed three fingers while using an allegedly defective table saw, alleged that defendant "failed to properly inspect the table saw, failed to have a proper first aid kit available, failed to provide him immediate transportation to an emergency room, and failed to properly handle his severed fingers").

### III. CONCLUSION

The trial court's judgment is reversed, and we render judgment dismissing the Williamses' suit for want of jurisdiction.

DORI CONTRERAS
Chief Justice

Delivered and filed the
6th day of February, 2020.

11